Harper, J.
So far as the claim to rank as a judgment creditor of the estate of Isaac Parker, depends on the judgment entered up against Isaac Parker after his death, regarding it in the light of any other judgment entered in like manner against a deceased defendant, we think it cannot avail the claimant. The brief merely states the fact, that the judgment was entered after the death of Isaac Parker. If so, undoubtedly it was erroneous, and might be set aside at law. Though the death of a garnishee does not abate the proceeding in attachment, yet undoubtedly the plaintiff, when an issue is depending, ought not to proceed to trial and judgment without bringing in the executors. The proper method of doing this, I suppose, w'ould be by a scire facias. In the present case, it was stated in argument that the executors had appeared and consented to the trial, and from this it seemed to be inferred that the executors would be estopped from any proceeding to set aside the judgment. No other person *36 than the executors would proceed at law for that purpose. Standing as a judgment against the deceased himself, it would have priority against all creditors who had not obtained judgment in his lifetime, and if this preference were obtained by the act and laches of the executors, they would be liable to the other creditors as for a devastavit. But I cannot take this view of the matter. The voluntary appearance of the executors , amounted to no more than if they had appeared upon a scire facias. They consented to go to trial, and I must suppose that the proper judgment should be entered. If an improper judgment was entered, I see nothing to estop the executors from setting it aside at law. A judgment against the executors would entitle the plaintiff to no priority, and this, at all events in equity and in a contest between creditors, cannot be regarded as any thing more. I do not understand it to be contended that the executors ought to be made personally liable.
*aqi *But even regarding it merely as a judgment against the executors, it is contended that it must have relation to the serving of the attachment on the garnishee, and bind his estate from that time. The Attachment Act, after providing for the issuing of the writ “to attach moneys, goods, chattels, debts and book of accounts, belonging to the absent debtor, in the hands of any person or persons whatsoever,” adds, “ and the attaching any part thereof in the name of the whole that is in such person’s hands, power or possession, shall secure and make the whole liable in law, to answer any judgment that shall be recovered and awarded upon that process.” The attaching of “ moneys” in the hands of the garnishee, has always been held to refer to a debt due by the garnishee to the absent debtor, and without this construction there is no provision in the Act for attaching such debt. But how are these moneys to be secured and made liable to answer the judgment? If there were in the hands of the garnishee any specific chattels of the absent debtor, such as a horse or a slave, or the evidences of debts due to him, such as bonds, notes, or books of account, they wo.uld be so bound that the garnishee could not, after service of the attachment, deliver them to the owner, or to any one else without making himself liable for the value. Or, perhaps the plaintiff might follow them in the hands of any one into whose possession they might afterwards come. If the garnishee should die, and these chattels should come into the possession of his executors, they would be compelled by the Court to deliver them up to the plaintiff in attachment who should afterwards recover a judgment. It is in this sense that the attachment is said to have a lien from the time of its being-levied. But these are things which are capable of being identified and distinguished. They constitute no part of the deceased garnishee’s estate, nor are liable to his creditors. But this creates no lien on the general estate of the garnishee, nor is the plaintiff in attachment ranked as a creditor of his, though he might become a creditor if the articles attached should not be forthcoming. But in the case of moneys in the garnishee’s hands, in consequence of a debt due by him to the absent debtor, how are these to be secured and made liable ? They are not capable of being identified. There is no specific money which you can direct the executors to pay over to the plaintiff. There is no general lien on the garnishee’s estate. I can conceive no other way in which these can be said *37 to be bound, but this: that after the attachment *levied, the r.¡. garnishee is not at liberty to pay the debt to his creditor', or to L 40 any one authorized by him to receive it, and if he does so, he will still be liable to the plaintiff in attachment who shall afterwards recover a judgment. By the serving- of the attachment, the garnishee who owes the absent debtor, is made the debtor of the plaintiff who shall afterwards recover judgment, but he is not the judgment debtor, until judgment is actually entered against him.
It is ordered and decreed that the decree of the Chancellor be reversed, and the Master’s, report confirmed.
Johnson, J., concurred.